UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JONATHAN J. CREWS,

             Petitioner,

v.                                CASE NO. 04-CV-70841-DT
                                HONORABLE DENISE PAGE HOOD

JOHN CASON,

             Respondent.
_____/

## <u>OPINION AND ORDER DENYING HABEAS CORPUS PETITION</u>

This matter is pending before the Court on petitioner Jonathan J. Crews' *pro se* application for the writ of habeas corpus. The habeas petition attacks Petitioner's state convictions for second-degree murder, carrying a dangerous weapon with unlawful intent, and possession of a firearm during the commission of a felony (felony firearm).

Also pending before the Court is Petitioner's motion for discovery, which seeks to provide the Court with a copy of the autopsy report and the trial court's decision on Petitioner's second motion for relief from judgment. Respondent has not answered Petitioner's motion, but he argues in an answer to the habeas petition that Petitioner's habeas claims lack merit and are barred from review by the statute of limitations and the doctrine of procedural default.

The Court has reviewed the state court record and concluded that Petitioner's claims lack substantive merit. Consequently, the habeas petition will be denied.


**I. Procedural History**

Petitioner was charged in St. Clair County, Michigan with one count of open murder, one count of carrying a dangerous weapon with unlawful intent, and two counts of felony firearm. On May 23, 1996, a circuit court jury found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, carrying a dangerous weapon with unlawful intent, MICH. COMP. LAWS § 750.226, and two counts of felony firearm, MICH. COMP. LAWS § 750.227b.[1]  The convictions arose from the fatal shooting of Jason Wyrembelski during an incident on July 8, 1995, involving two rival gangs in Port Huron, Michigan.  The trial court sentenced Petitioner as a habitual offender to two years in prison for the felony firearm convictions, followed by concurrent terms of forty to sixty years in prison for the murder and four to seven and one-half years in prison for carrying a dangerous weapon.

In an appeal of right, Petitioner argued:

I.      Defendant was denied a fair trial by the introduction, over objection, of evidence of a shooting on the same corner the week before the incident in question, especially where there was no evidence that Defendant was involved in that shooting.

II.     Defendant was denied his right to a fair and impartial jury by the trial court's denial of his motion for change of venue.

III.    The trial court committed reversible error and denied Defendant a fair trial by giving the prosecutor's requested instruction on flight where there was no[] evidence that Defendant was trying to flee.

IV.     The trial court committed reversible error and denied Defendant a fair trial by admitting, over objection, a letter allegedly written by Defendant in rebuttal.

V.      The trial court erred reversibly and denied Defendant a fair trial by denying Defendant's motion in limine to limit the admission of

---

[1]  An earlier trial resulted in the declaration of a mistrial, because the jury was unable to reach a unanimous decision.

2

evidence regarding gang activity.

VI.     The trial court committed reversible error and denied Defendant a
        fair trial by refusing to give the requested instruction on the
        destruction of the T-shirt, and the requested instruction on
        reasonable doubt.

VII.    Defendant has been denied his right against double jeopardy by
        being convicted of both felony firearm and possession of a firearm
        with unlawful intent.

Petitioner moved for leave to file a supplemental brief containing the following two

additional arguments:

[VIII.] Defendant's conviction should be reversed where exculpatory
        evidence was destroyed before trial.

[IX.]   Defendant was denied his right to effective assistance of counsel
        by his attorney's failure to use the preliminary examination
        transcript to impeach a key witness against him.

The Michigan Court of Appeals denied Petitioner's motion to file a supplemental brief and

subsequently affirmed Petitioner's convictions in an unpublished, *per curiam* opinion. *See*

*People v. Crews*, No. 196602 (Mich. Ct. App. Oct. 27, 1998).

Petitioner raised all nine claims enumerated above in an application for leave to appeal in

the Michigan Supreme Court. On June 29, 1999, the supreme court denied leave to appeal

because it was not persuaded that the questions presented should be reviewed. *See People v.*

*Crews*, No. 113508 (Mich. Sup. Ct. June 29, 1999).

On September 13, 1999, Petitioner submitted his first habeas corpus petition in this

District. On or about July 24, 2000, while the first habeas petition was pending, Petitioner filed

a motion for relief from judgment in state court. The trial court denied the motion on August 3,

2000. The court's order states that the motion alleged grounds for relief that were decided on

3

appeal.  The next sentence in the order states that Petitioner had failed "to establish 'good cause' and 'prejudice' since those issues were not raised during the prior appeals."  *People v. Crews*, No. 95-2083-FC (St. Clair County Cir. Ct. Aug. 3, 2000).  The order concludes by stating that post-appeal relief was being denied for lack of merit in the grounds submitted.

This Court subsequently dismissed Petitioner's first habeas petition without prejudice so that Petitioner could further exhaust state remedies.  *See Crews v. Caruso*, No. 99-CV-76281-DT (E.D. Mich. Oct. 31, 2000).  On April 26, 2001, the Michigan Court of Appeals denied Petitioner's application for leave to appeal the trial court's decision on his motion for relief from judgment.  The court of appeals stated that Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Crews*, No. 229900 (Mich. Ct. App. Apr. 26, 2001).  On December 21, 2001, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Crews*, No. 119472 (Mich. Sup. Ct. Dec. 21, 2001).

Petitioner filed another motion for relief from judgment on September 26, 2002.  The motion was based on the affidavit of Grant McCoy, an alleged eyewitness to the fatal shooting of Jason Wyrembelski.  Petitioner asserted that McCoy's affidavit was newly discovered evidence, which warranted an evidentiary hearing and new trial.  The trial court denied the motion on the ground that Petitioner had failed to show "good cause" for not raising the claim on appeal, as required by Michigan Court Rule 6.508(D)(3).

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals dismissed his appeal "for lack of jurisdiction because there is no appeal from the denial of a subsequent motion for relief from judgment under MCR 6.508.  MCR 6.502(G)(1)."  *People v. Crews*, No. 248002 (Mich. Ct. App. June 10, 2003).  Petitioner raised the same issue in the

4

Michigan Supreme Court, which denied leave to appeal because Petitioner's motion for relief

from judgment was prohibited by Michigan Court Rule 6.502(G). *See People v. Crews*, No.

124436 (Mich. Sup. Ct. Dec. 30, 2003).[2]

Petitioner signed the pending habeas corpus petition on January 6, 2004. His grounds for

relief read:

> I.     Petitioner is actually innocent of the murder, in which he was
>        convicted for, thus, further incarceration will deny him of his
>        constitutional rights under the Eighth and Fourteenth Amendment.
>
> II     Petitioner's conviction should be reversed, where exculpatory
>        evidence was destroyed before trial. Thus, denied Defendant's
>        constitutional right to prepare a defense in violation of due
>        process.
>
> III.   Petitioner is entitled to an evidentiary hearing to establish that he
>        was denied his state and federal constitutional right to the effective
>        assistance of counsel by counsel's failure to use preliminary exam
>        transcripts to impeach a key witness against him.
>
> IV.    Defendant was denied his Sixth Amendment right to an impartial
>        jury by jurors of his peers, where the jury pool at a minimum was
>        racially motivated and there were no black jurors on the entire jury
>        pool.
>
> V.     Defendant was denied a fair and impartial trial in violation of the
>        Sixth and Fourteenth Amendment of the United States
>        Constitution, where extraneous influence on the jury denied him a
>        fair trial.

## II. The Statute of Limitations

---

[2] Rule 6.502(G) governs successive motions for relief from judgment. It provides that, "after August 1, 1995, one and only one motion for relief from judgment may be filed with regard to a conviction" and that "[a] defendant may not appeal the denial or rejection of a successive motion." Mich. Ct. R. 6.502(G)(1). An exception exists for "a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(G)(2).

Respondent argues that Petitioner's claims are barred by the one-year statute of limitations for habeas petitions brought by state prisoners. *See* 28 U.S.C. § 2244(d). The one-year limitations period runs from the latest of

>        **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>        **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>        **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>        **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The statute is tolled while a "properly filed" post-conviction motion is pending, that is, achieved final resolution, in state court. 28 U.S.C. § 2244(d)(2); *Carey v. Saffold*, 536 U.S. 214, 216-221 (2002).[3]

Respondent argues that the statute of limitations was running while Petitioner's first habeas corpus petition was under consideration. Respondent further argues that the limitations period was not tolled while Petitioner's second motion for relief from judgment remained pending in state court, because the motion was an improper second or successive motion. The Court finds these arguments unpersuasive for the following reasons.

First, although the one-year limitation period is not tolled while a first habeas petition is

---

[3] In this Circuit, the statute of limitations is further tolled "until the conclusion of the time for seeking Supreme Court review of the state's final judgment on [an application for state post-conviction or other collateral relief] independent of whether the petitioner actually petitions the Supreme Court to review the case." *Abela v. Martin*, 348 F.3d 164, 172-73 (6th Cir. 2003), *cert. denied*, 541 U.S. 1070 (2004).

pending in federal court, *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), Petitioner's first habeas petition was dismissed without prejudice before the Supreme Court published its decision in *Walker*. The Court's order of dismissal did not establish any conditions for returning to state court or for reinstating the federal habeas petition. Moreover, federal courts are not precluded "from deeming the limitations period tolled for [a first federal habeas petition] as a matter of equity." *Walker*, 533 U.S. at 183 (Stevens, J., concurring).[4]  Second, although Respondent maintains that Petitioner's second motion for relief from judgment was not properly filed and, therefore, did not toll the limitations period, some courts have held that a post-conviction motion is "properly filed" for purposes of § 2244(d)(2) even if it is a second or successive motion. *See, e.g., Villegas v. Johnson*, 184 F.3d 467, 470 (5th Cir. 1999); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998); *Hudson v. Martin*, 68 F. Supp.2d 798, 801 (E.D. Mich. 1999) (Tarnow, J.).

Even assuming that the pending habeas petition is untimely, the statute of limitations is not a jurisdictional bar, *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003), and the habeas petition can be denied on other grounds. Consequently, the Court is not required to decide whether the statute of limitations applies. *Aron v. United States*, 291 F.3d 708, 718 (11th Cir. 2002) (Carnes, C.J., concurring). Because it is easier "to deny relief on the merits than to figure out the issues relating to the statute of limitations," and because "[n]othing in the statute prohibits a court from proceeding in that way," *id.*, the Court declines to dismiss the habeas petition on the basis of the statute of limitations. The Court will proceed to address Petitioner's claims in light of the following standard of review.

_____

[4]  The Supreme Court recently held that federal district courts may stay and abey a mixed petition of exhausted and unexhausted claims in appropriate circumstances. *See Rhines v. Weber*, __ U.S. __, 125 S. Ct. 1528 (2005).

7

### III.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

When the state court has not addressed or resolved claims based on federal law, courts

have held that the decision is not an "adjudication on the merits." Thus, a federal habeas court reviews such unaddressed claims de novo. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir.2003) (distinguishing "no results" from no reasoning).

Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis . . . a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir.1999)).

The independent review, however, is not a full, de novo review of the

claims.  *Id*. [T]he review remains deferential, because the court cannot grant relief
unless the state court's result contradicts the strictures of AEDPA.  *Id*.

*Howard v. Bouchard*, 405 F.3d 459, 467-68 (6th Cir. 2005).

## IV.  Claim I - Actual Innocence

The first habeas claim alleges that Petitioner is actually innocent of the murder for which

he was convicted.  Petitioner raised this claim in his second motion for relief from judgment and

in applications for leave to appeal the trial court's denial of that motion.  Because none of the

state courts addressed Petitioner's federal claim, this Court's review of the claim is *de novo*.  *Id*.

at 467.

The basis for Petitioner's claim is Grant McCoy's affidavit, which reads:

I Grant Donyea McCoy, state on the night in question, I was residing at 1234
Lapeer St. Apt 2 in Port Huron.  From the view in the window I could clearly see
the 13th St store and laundr[a]mat.  I observed Brian Lindsay on the corner of the
street standing near the store.  Then I observed a car of gang members, including
Jason Wyr[e]mbelski drive by yelling at Brian Lindsay.  The car then pulled into
the laundr[a]mat parking lot.  The occupants got out of the car in pursuit of Brian
Lindsay.  More words were exchanged.  I looked to my right and s[aw] Jonathan
Crews on the opposite corner.  One of the gang members fired shots at Brian
Lindsay.  I can't recall how many shots were fired, but Jonathan Crews shot back
in self defense.  Shots kept being exchanged.  As the gang members were running
back towards the car one of them turned around to fire back while Jason
W[yre]mbelski was still running forward.  That's when Jason W. fell to the
ground holding his chest.

Pet. for Writ of Habeas Corpus, Appendix A.

Petitioner interprets this affidavit, which is dated August 10, 2002, to mean that a

member of the victim's own gang turned around and shot the victim, who was trailing behind, as

the group fled.  Petitioner contends that this information is newly discovered evidence of a

trustworthy eyewitness to the murder.

"Claims of actual innocence based on newly discovered evidence have never been held to

9

state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). As long ago as 1963, then-Chief Justice Warren stated that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400.

A claim of actual innocence is merely "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id*. at 404. The Supreme Court has never held that the fundamental-miscarriage-of-justice exception "extends to freestanding claims of actual innocence." *Id*. at 404-05. Furthermore, claims of actual innocence "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id*. at 417.

Grant McCoy's affidavit is suspect because it does not explain why he did not come forward seven years earlier and inform the police what he supposedly observed. Nor has Petitioner explained how he became aware of McCoy's observations.

The affidavit also is suspect because it contradicts the trial testimony, including Petitioner's own testimony that he did not see any guns, possess a gun, or fire at the rival gang. (Tr. May 17, 1996, at 1089, 1099.) There also was no evidence that the victim's gang was armed on the night in question or that the rival gangs fired at each other. The seven fired cartridge

10

cases found at the scene all came from the same gun (Tr. May 14, 1996, at 572-73), and Brian

Lindsay testified that shooting came from behind him as he backed away from the victim and the

four men accompanying him.  (*Id*. at 517-20.)  Additionally, Samson Cortez and Brian Lindsay

identified Petitioner as the gunman (*Id*. at 415-16, 519, 526-34), and Heath Allen testified that he

saw Petitioner place a gun in the waistband of his pants after the shooting (Tr. May 15, 1996, at

720-21, 752).  The Court concludes that Petitioner's claim of actual innocence does not entitle

him to habeas relief.

## V.  Claims II through IV

### A.  Procedural Default

Respondent argues that Petitioner's second, third, and fourth claims are procedurally

defaulted because, when Petitioner raised these claims in his first motion for relief from

judgment, all three state courts denied relief under Michigan Court Rule 6.508(D).  Rule

6.508(D)(3) generally bars relief from judgment if the defendant alleges nonjurisdictional

grounds that could have been raised on appeal from the conviction or sentence.[5]  Both the

Michigan Court of Appeals and the Michigan Supreme Court denied relief from judgment in

brief orders stating that Petitioner had failed to establish entitlement to relief under Rule

6.508(D).  The United States Court of Appeals for the Sixth Circuit has held that this type of

brief order is a sufficient explanation for federal district courts to conclude that the orders were

based on a procedural bar.  *See Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002);

*Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000).

---

[5]  An exception exists when the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief."  Mich. Ct. R. 6.508(D)(3).

11

In *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), however, the Sixth Circuit determined that the petitioner's claims were not procedurally defaulted even though the Michigan Supreme Court had denied leave to appeal in a similar order citing Michigan Court Rule 6.508(D).  The Sixth Circuit stated that "the Michigan Supreme Court's citation to M.C.R. 6.508(D) in its order denying Abela leave to appeal does not demonstrate that that court denied him leave to appeal on the basis of a procedural default, much less on the procedural ground described in M.C.R. 6.508(D)(3) . . . ."  *Abela,* 380 F.3d at 922.  The Sixth Circuit found the rationale in *Simpson* and *Burroughs* to be inapplicable, because the lower state courts denied leave to appeal "for lack of merit on the grounds presented" rather than invoking a procedural bar.  *See id*. at 923.

The state appellate courts declined to review Petitioner's second, third, and fourth claims on the basis of Rule 6.508(D), but the trial court stated that it was denying Petitioner's post-conviction motion for lack of merit in the grounds submitted.  Moreover, "[p]rocedural default is not a jurisdictional bar to review on the merits."  *Howard*, 405 F.3d 476.[6]

> Rather, "[i]n the habeas context, the application of the independent and adequate state ground doctrine," of which a procedural default is typically an instance, "is grounded in concerns of comity and federalism." [*Coleman v*. Thompson, 501 U.S. 722, 730 (1991)] (contrasting habeas proceeding with [the Supreme] Court's direct review of a state court judgment).  Thus, procedural default is normally a "defense" that the State is "obligated to raise" and "preserv[e]" if it is not to "lose the right to assert the defense thereafter."  *Gray v. Netherland*, 518 U.S. 152, 166

---

[6] *See also Batchelor v. Cupp*, 693 F.2d 859, 863 n.2 (9th Cir. 1982):

The procedural default doctrine is based on comity and is not jurisdictional; the federal courts have the power to reach the merits notwithstanding a state procedural default.  *Fay v. Noia*, 372 U.S. 391, 438 (1963).  That this remains so is implicit in the holding that the federal courts will review federal issues notwithstanding a state procedural default if the petitioner shows cause and prejudice for the default.  *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

12

(1996); *see Jenkins v. Anderson*, 447 U.S. 231, 234, n. 1 (1980).

*Trest v. Cain*, 522 U.S. 87, 89 (1997).  The Court, therefore, will excuse the alleged procedural

default and proceed to address the merits of claims II through IV.

## B.  Lost Evidence

The second habeas claim alleges that Petitioner's right to present a defense was violated

because exculpatory evidence (a tee shirt worn by the deceased victim) was destroyed before

trial.  Petitioner contends that the victim's tee shirt could have been examined for gun powder

residue, which would have (1) supported the defense theory that the victim was shot point blank,

as the autopsy report states, and (2) undermined the prosecution's theory that the victim was shot

from a distance of thirty feet away.

Criminal defendants are entitled to "a meaningful opportunity to present a complete

defense."  *California v. Trombetta,*  467 U.S. 479, 485 (1984).  "[S]uppression by the

prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  However, "the Due Process

Clause 'requires a different result when [courts] deal with the failure of the State to preserve

evidentiary material of which no more can be said than that it could have been subjected to tests,

the results of which might have exonerated the defendant.'" *Illinois v. Fisher*, 504 U.S. 544

(2004) (*quoting Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)).  "Failure to preserve this

'potentially useful evidence' does not violate due process '*unless a criminal defendant can show*

*bad faith on the part of the police.*'" *Id*. (quoting *Youngblood*, 488 U.S. at 58) (emphasis added

in *Fisher*).

13

The prosecutor speculated that the medical examiner unwittingly disposed of the victim's tee shirt after the autopsy. A police officer testified that he requested the shirt, according to his usual practice, but that the medical examiner's office was unable to explain what had happened to the victim's clothing. (Tr. May 10, 1996, at 319-21.) There is nothing in the record to suggest that anyone acted in bad faith. Furthermore, as succinctly explained by the Michigan Court of Appeals on direct review,

> the evidence was not significant to [Petitioner's] defense. The medical expert testified that if the victim had been shot at close range, as the defense contended, there would have been gunpowder residue in the wound itself, and there was none. The firearms expert also testified that tests for gunpowder residue on clothing are meaningless without the weapon that fired the shot, which was never recovered in this case.

*Crews*, Mich. Ct. App. No. 196602, at 4 (internal citation omitted).

The Court concludes that Petitioner was not deprived of his right to present a defense by the destruction of the victim's tee shirt. Accordingly, the state courts rejection of Petitioner's claim did not result in decisions that were contrary to, or unreasonable applications of, clearly established federal law or unreasonable determinations of the facts.

### C. Trial Counsel

The third habeas claim alleges that Petitioner was denied his constitutional right to effective assistance of counsel. Petitioner contends that his trial attorney should have used the transcript from the preliminary examination to impeach Brian Lindsay, who was a key witness for the prosecution.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), qualifies as "clearly established Federal law" for ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391; *Caver v. Straub*, 349 F.3d 340, 347 (6th Cir. 2003). The Supreme

14

Court stated in *Strickland* that, to show constitutionally ineffective assistance, the petitioner must demonstrate that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To prove that counsel's performance was deficient, Petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The prejudice prong of the Strickland test requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Brian Lindsay testified at the preliminary examination that he did not see Petitioner fire a gun and that the information he gave to the police about Petitioner being the shooter was based on what he had heard other people say. In addition, he described the shooter as wearing a hood and a bandanna over his face, but he did not remember what Petitioner had been wearing, although he knew him at the time. (Tr. July 25, 1995, at 171, 176-78, 185-86,189.)

At trial, Lindsay described the shooter as wearing a black hooded jacket. He testified that he followed the shooter to a house where he was able to see that the person in the hooded jacket was Petitioner. He also heard some people wondering aloud what Petitioner had been shooting. (Tr. May 14, 1996, at 520-30.)

Defense counsel did attempt to impeach Brian Lindsay with his prior testimony. He asked Lindsay whether he had previously testified that the shooter wore a bandanna on his face. Lindsay responded that it was possible the shooter wore a bandanna, but he was not sure. (*Id*. at

15

553.)[7]

Defense counsel's failure to impeach Lindsay with additional testimony from the preliminary examination did not amount to deficient performance, because the prosecutor had questioned Lindsay about his previous inability to say that Petitioner was the shooter. Lindsay explained in response to the prosecutor's questions, that, at the preliminary examination, he had been unable to say that it was Petitioner because he did not see the shooter's face at the time of the shooting. Lindsay also testified at trial that he had no doubt the shooter was Petitioner because he had recognized Petitioner's voice, he followed the shooter to a house where Petitioner was dressed like the shooter, and he heard incriminating statements about Petitioner at the house. (*Id*. at 533-34.)   Samson Cortez also testified that Petitioner was the shooter (*Id*. at 415-16, 459), and Heath Allen testified that, after the shooting, he recognized Petitioner and saw him place a gun in the waistband of his pants. (May 15, 1996, at 721, 752.)

The Court concludes that defense counsel's performance was not deficient and, even if it was, the deficient performance did not prejudice the defense. Therefore, the state courts' rejection of Petitioner's claim did not result in decisions that were contrary to, or unreasonable applications of, *Strickland*.

### D.  The Jury Venire

The fourth habeas claim alleges that Petitioner was denied his Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community. Petitioner contends that there were no African-American jurors in the entire jury pool assigned to his case.

---

[7] The record also indicates that defense counsel attempted to impeach Lindsay with his statements to the police. (*Id*. at 542-46.)

16

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

> This right to an impartial jury includes the right to a jury drawn from a "fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 526 & 530 (1975). As the Supreme Court has emphasized, however, there is "no requirement that petit juries *actually chosen* must mirror the community." *Id.* at 538 (emphasis added). "Defendants are not entitled to a jury of any particular composition, . . . but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* (citations omitted).

*United States v. Forest*, 355 F.3d 942, 953 (6th Cir. 2004), *vacated on other grounds by Garner v. United States*, __ U.S. __, 125 S. Ct. 1050 (2005).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

"Systematic" in this context means "inherent in the particular jury-selection process utilized." *Id.* at 366. "In *Duren*, the underrepresentation was evident in every weekly venire for a period of nearly a year. Continued underrepresentation made it evident that such underrepresentation was systematic . . . ." *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988).

Petitioner has satisfied the first component of this test, because "African Americans are a distinctive group in the community." *Forest*, 355 F.3d at 953 (citing *Lockhart v. McCree*, 476 U.S. 162, 175 (1986)). Petitioner has not satisfied the second component of the test, for he has not alleged the number of eligible African Americans in the community from which his jury

17

venire was drawn. Even assuming that he could make a comparison between the percentage of eligible African-Americans in the community and the absence of African Americans in his venire,[8] Petitioner has not satisfied the third and final prong of the test by demonstrating that African Americans were systematically excluded from jury venires in St. Clair County. He merely alleges that African Americans were not represented in his jury venire.

Furthermore, the prosecutor noted that, in the previous fifteen years, blacks had been included in jury venires and had sat on juries. The trial court stated that there was no evidence of a purposeful scheme to omit blacks from the panel and that none has been claimed by defense counsel or anyone else. (Tr. May 9, 1996, at 6-8.)

This Court concludes that Petitioner has failed to establish a prima facie violation of the fair-cross-section provision of the Sixth Amendment. Therefore, the state courts' rejection of Petitioner's fourth claim did not result in decisions that were contrary to, or unreasonable applications of, Supreme Court precedent.

## VI.  Claim V - Evidence of a Prior Shooting

The fifth and final habeas claim alleges that an extraneous influence on the jury deprived Petitioner of a fair trial. The allegedly extraneous influence consisted of evidence of a prior shooting on the same corner where Jason Wyrembelski was shot. The prosecutor produced evidence that bullet fragments from the prior shooting matched bullets recovered during the investigation of Wyrembelski's death and were fired from the same gun. (Tr. May 14, 1996, at 580.). According to Petitioner, the prejudicial implication was that he was a violent person, even

---

[8]  When defense counsel raised this issue at trial, he pointed out that four to five percent of the population of St. Clair County was black and that the entire venire of over a hundred people was white. (Tr. May 9, 1996, at 5-6.)

though there was no evidence of his involvement in the earlier shooting.

Petitioner raised this claim on direct review of his convictions.  The Michigan Court of Appeals determined that

> the evidence was relevant to disproving defendant's theory of the case; defendant's theory was that the murderer was a person who was not a member of a gang, while the prosecution sought to prove that the murder weapon was a "gang gun" owned by the Black Mafia gang and used to defend gang territory. Because access to the murder weapon was probative of defendant's guilt or innocence, we conclude that this argument does not provide grounds for reversal.

*Crews*, Mich. Ct. App. No. 196602, at 2.  The court of appeals further concluded that any error in admitting the evidence was harmless in view of the overwhelming evidence of Petitioner's guilt.

"[F]ederal habeas review of state court evidentiary rulings is extremely limited."  *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005) (citing *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990)).  State court rulings on the admission or exclusion of evidence usually may not be questioned on federal habeas review.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  An exception exists when violation of a state's evidentiary rule resulted in the denial of fundamental fairness, thereby violating due process.  *Id.*

The admission of evidence concerning the prior shooting was not fundamentally unfair, because the prosecutor never suggested that Petitioner committed the prior shooting.  He used the evidence as part of the *res gestae* of the incident and to show that, in the weeks leading up to the murder, violence between the two rival gangs had escalated.

To the extent that the prosecutor may have been trying to show that Petitioner had committed a similar act in previous weeks, Petitioner's claim has no merit because there is no Supreme Court decision holding that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.),

19

*cert. denied sub nom Bugh v. Bradshaw*, 540 U.S. 930 (2003).  Thus, the state appellate court's determination that Petitioner's claim did not warrant reversal cannot be deemed "contrary to" Supreme Court precedent under § 2254(d)(1).  *Id.* at 513.

Furthermore, any error in admitting the evidence could not have had a "substantial and injurious effect or influence" on the jury's verdict in light of other evidence that Petitioner shot Jason Wyrembelski.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  The state appellate court's conclusion that any error was harmless did not result in a decision that was contrary to, or an unreasonable application of, *Brecht*.

## VII.  Conclusion

For all the reasons given above, Petitioner is not entitled to the writ of habeas corpus. Therefore, his application for the writ [Doc. #1, Jan. 29, 2004] is denied.  Petitioner's motion for discovery, which accompanied his reply brief [Doc. #44, August 18, 2004] likewise is denied. The autopsy report is not needed for resolution of Petitioner's claims, and the trial court's order denying Petitioner's second motion for relief from judgment is part of the record before the Court.

 s/ DENISE PAGE HOOD
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated: August 31, 2005

20